# Birmingham Railway & Electric Co. v. Baird.

*Action by Passenger against Street Railway Company for Personal Injuries inflicted by Employee.*

1. *Common carrier; duty to passengers.*—Common carriers owe the duty to passengers not only to carry them safely and expeditiously between the termini of the route expressed in the contract, but also to conserve by every reasonable means, their convenience, comfort and peace throughout the journey, and protect them from insult, indignities and personal violence; and in the discharge of this duty, it is immaterial whence the disturbance of the passenger's peace, comfort or personal safety is threatened—whether from another passenger, a stranger, or from an employee or servant of the common carrier.

2. *Same; same; immaterial whether act done within scope of servant's employment.*—A common carrier is liable to any one sustaining the relation of passenger to it, for an injury resulting from any act of its servants or employees, whether willful and malicious or not, and even though such act done is not in the course or within the scope of the servant's or agent's

[Birmingham Railway & Electric Co. v. Baird.]

employment; the rule that the master is not liable for injury resulting from the willful and malicious acts of his agent, not done within the scope of his employment, not being applicable when the injury is inflicted upon a passenger by the carrier's agent or servant.

3. *Same; same; assault by conductor.*—If the conductor of a train assaults a passenger otherwise than under a necessity to defend himself or a passenger from battery, or in rightfully ejecting the passenger who by his conduct to other passengers or otherwise has forfeited his right to carriage, the carrier is liable; and no conductor can assault a passenger in retaliation for an assault committed upon him, or for abusive words, or in revenge or punishment under any circumstances, without rendering the carrier liable for damages.

4. *Action by passenger against common carrier; excessive damages.*—In an action by a passenger against a common carrier to recover damages for an assault made upon him by the conductor while riding upon one of the defendant's cars, where there is evidence tending to show that the plaintiff, who was disabled at the time of the assault, was badly beaten by the conductor, a verdict and judgment fixing the plaintiff's damages at twenty-five hundred dollars, can not be said to be excessive.

APPEAL from the City Court of Birmingham.

Tried before the Hon. CHAS. A. SENN.

This action was brought by the appellee, J. L. Baird, a minor, by his next friend, against the appellant, the Birmingham Railway and Electric Company. The complaint contained three counts. The first count was as follows: "The plaintiff, J. L. Baird, who is a minor under twenty-one years of age, and who sues by his next friend, A. C. Baird, claims of the defendant, the Birmingham Railway and Electric Company, a private corporation under the laws of Alabama, five thousand dollars damages in this, that on and prior to the 29th day of January, 1898, the defendant was engaged in operating and running cars or trains between Birmingham, Alabama, and East Lake, Alabama, as a common carrier of passengers for hire or reward; that the said J. L. Baird embarked on one of defendant's cars or trains at College Station, and paid his way to his destination, which was Thirty-ninth street station on defendant's line, near the Avondale cotton factory, and

the said J. L. Baird notified the conductor in charge of the car upon which plaintiff was riding, one W. E. Sorsby, that his destination was Thirty-ninth street station, and informed said Sorsby that he wished to stop at said station; that when the car upon which the said J. L. Baird was riding reached Thirty-ninth street station it did not stop at said station, and thereupon the said J. L. Baird, in order to stop said car, pulled the bell cord on said car, to signal the motorman thereon to stop the same, and immediately thereafter the said W. E. Sorsby, conductor as aforesaid, also pulled the bell cord, whereupon the said Baird, finding that the said car had not stopped and was not slowing up, pulled the bell cord again; the said car not stopping, but continuing to pass beyond said station, and having then reached some distance beyond said station, the said J. L. Baird stepped inside of the car, having before that time been on the back platform of said car, and pulled the bell cord again, whereupon the said Sorsby imediately took hold of the bell cord in front of said J. L. Baird and prevented his ringing the bell; thereupon the said J. L. Baird returned to the rear platform of the car, and the said W. E. Sorsby, conductor as aforesaid, pursued him to the rear platform of the car and with great violence assaulted and beat the said J. L. Baird in the face and on the body and head and neck with his fist, and greatly bruised and ill treated the said J. L. Baird and put him in great peril of knocking him off the platform of said car, and the plaintiff avers that the said Sorsby committed the acts above mentioned upon the said J. L. Baird while in the performance of his duties as conductor of defendant's said car, and that by reason thereof the said J. L. Baird was greatly humiliated and chagrined and was brought into the contempt of those present on said car, and that his feelings were greatly outraged and wounded, and he was made sick, sore and lame by the assault and beating aforesaid, wherefore he sues."

In the second count it was charged that the conductor, Sorsby, "while in the discharge of his duties and in the light of his employment as such conductor, will-

fully, wantonly and violently assaulted the said J. L. Baird," etc.

In the third count it was charged that the said Sorsby "While acting within the scope of his employment followed and pursued the said J. L. Baird out of the car and on to the platform thereof, and while the car was moving at a rapid rate of speed, willfully and violently assaulted the said J. L. Baird," etc.

The cause was tried upon the plea of not guilty. The plaintiff introduced testimony tending to show that on the 29th of January, 1898, the defendant was operating an electric car line as a common carrier of passengers for hire, from East Lake to Birmingham, and that on said day the plaintiff boarded one of defendant's cars as a passenger at College Station, a regular station on defendant's road, and paid his fare for transportation to Thirty-ninth street station, telling the conductor to put him off at said station; that plaintiff had employment with T. C. Thompson & Co., at the cotton factory at or near said Thirty-ninth street station; that the next station beyond Thirty-ninth street station was Mary Pratt Furnace, about a quarter of a mile distant; that when said car was approaching Thirty-ninth street station plaintiff made preparations to get off, going out on the plaform, but the car did not stop or slacken its speed, and the plaintiff, seeing that the car was not going to stop, pulled the bell cord, which was one of the ways passengers on the line had to stop the cars when the conductor was not looking; that at this time the conductor was in an adjoining car, but came into the car upon which plaintiff was riding and caught hold of the bell cord to keep the plaintiff from ringing the bell. Plaintiff said to the conductor, "Why don't you stop the car where I told you?" that both plaintiff and the conductor had hold of the cord when it broke; that thereupon the conductor advanced rapidly to the plaintiff, who was on the rear platform, and, upon getting within striking distance, struck the plaintiff three times in the face, and, just after the third blow, one Wheelock, another passenger on the platform, struck the conductor, and then the conductor ceased striking. The proof

22

[Birmingham Railway & Electric Co. v. Baird.]

showed that plaintiff had recently been vacinnated, and was carrying his left arm in a sling, the left sleeve being empty. The proof showed that the blow struck by the conductor was severe, causing physical pain, and the car was full of people; that the plaintiff did not strike back at all; and that the time plaintiff rang the bell the car was running ten or twelve miles an hour, and that when plaintiff rang the bell the car began to slow down; that the conductor rang the bell and then the car got faster; that then the plaintiff tried to ring the bell again, but he and the conductor then had hold of the cord, when it broke and the conductor advanced rapidly a distance of ten feet and struck the plaintiff, knocking him against the hand rail on the rear platform, at which time the car was running eight or ten miles an hour over a rough road-bed. Plaintiff also introduced testimony tending to show that the manner of said conductor was angry and violent.

The defendant introduced testimony tending to show that it was not the custom for passengers to ring the bell when they wished to get off, but to notify the conductor, who would ring the bell; also that the manner of plaintiff was angry and violent when he and the conductor were pulling the bell cord; that he did not hear plaintiff ring the bell; but that when he saw plaintiff catch hold of the cord, he, the conductor, rang two bells, which means stop instantly; but that as fast as he would ring for a stop, the plaintiff's ringing would cause the car to go forward; that when the bell cord broke, the conductor was jerked forward towards and within three or four feet of the plaintiff; and that if plaintiff told the conductor to let him off at Thirty-ninth street station, the conductor had forgotten it. One of the defendant's witnesses testified that plaintiff and the conductor were striking at each other, but the conductor himself testified that if the plaintiff struck at him he did not know it. The other facts of the case, necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion.

The court, in its oral charge to the jury, among other things, instructed them as follows: (1.) "I ask your

Honor to say to the jury that the argument was improper and hat they must not consider it." (2.) "If you believe that an assault was committed and if you believe it was done wantonly and recklessly, under such circumstances the law would justify you in inflicting punitive damages."

The defendant separately excepted to each of these portions of the courts oral charge. The defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1.) "If you believe from the evidence that after the cord broke or parted the conductor and the plaintiff continued a struggle, begun between them before such cord broke or parted, and in such struggle so continued the plaintiff, after the cord broke or parted, pulled or jerked the conductor rudely and angrily along the car and the conductor struck the plaintiff after the cord broke or parted because of such rude and angry conduct and act of plaintiff, I charge you that the striking of the plaintiff by the conductor at such time and under such circumstances would not be an act done by the conductor in the line and scope of his duty as an agent of the defendant, and your verdict must be for the defendant." (2.) "If you believe from the evidence that the plaintiff was the aggressor, that he assaulted and beat the conductor by rudely, violently, offensively and angrily pulling him along or across the car several feet to the door and near the plaintiff, and that by such rude, violent, offensive and angry conduct of the plaintiff the conductor was provoked to strike the plaintiff, your verdict must be for the defendant, even though you might believe from the evidence that the conductor used more force than was necessary." (3.) "I charge you, if you believe the evidence, that a conductor has the right to strike a passenger with his fist who at the time commits an assault and battery on him, and the railroad company, for whom the conductor was employed, will not be liable to the passenger in damages for this striking of him by the conductor." (4.) "I charge you, gentlemen of the jury, if you believe the evidence in this case, that it was the plaintiff's duty to have called upon

the conductor to stop said car and not pull the bell cord himself, and if you further believe from the evidence that the plaintiff did pull said bell cord, knowing that the conductor had hold of the same, and if you further believe from the evidence that he, in an angry manner, pulled the conductor within three feet of himself, and that the conductor immediately struck plaintiff, then you must find a verdict for the defendant." (5.) "If you believe from the evidence in this case that Baird was in fault in provoking the difficulty, your verdict must be for the defendant." (6.) "If you believe from the evidence in this case that Baird was in fault in provoking Sorsby to strike him, your verdict will be for the defendant." (15.) "I charge you, gentlemen of the jury, if you believe from the evidence in this case that the plaintiff committed an assault and battery on the conductor, and you further believe from the evidence that the conductor struck the plaintiff in retaliation of said assault and battery so committed upon him by plaintiff, you can not find that the defendant is responsible for such an act of said conductor." (16.) "I charge you, gentlemen of the jury, if you believe from the evidence in this case that the plaintiff knowingly pulled the bell cord, while the conductor was holding or pulling the same, until the said bell cord was broke; and if you further believe from the evidence that said bell cord did break; and if you further believe from the evidence that said conductor was pulled or thrown towards the plaintiff and within three feet of him by reason of the pulling of said bell cord by the plaintiff and by the breaking of the same; and you further believe from the evidence that the conductor struck the plaintiff immediately after he got close enough to plaintiff to strike him, your verdict must be for the defendant." (17.) "If you believe from the evidence in this case that Baird was in fault in provoking the difficulty, you will find your verdict for the defendant." (18.) "If the jury believe from the evidence in this case that Sorsby did not provoke the difficulty, they will find their verdict for the defendant." (19.) "I charge you that under the evidence in this case Sorsby was free

from fault in bringing on the difficulty in this case." (20.) "I charge you, gentlemen of the jury, that in order for the plaintiff to recover against the defendant in this case the evidence must reasonably satisfy you that Baird was free from fault in bringing on the difficulty, and the evidence must reasonably satisfy you that Sorsby alone provoked the difficulty." (21.) "If you believe from the evidence that plaintiff by his own misbehavior provoked the conductor to strike him, your verdict must be for the defendant." (22.) "If you believe from the evidence that by his own improper and illegal conduct the plaintiff provoked the conductor to strike him, you must find for the defendant." (23.) "If you believe from the evidence that the plaintiff assaulted and beat the conductor and by such assault and battery the plaintiff provoked the conductor to strike the plaintiff, you must find for the defendant." (24.) "If you believe from the evidence that the plaintiff and the conductor caught hold of the bell cord and engaged in a contest or struggle over it, and in such contest or struggle the plaintiff endeavored to ring the bell, and the conductor sought to prevent the plaintiff from ringing the bell, and in such struggle or contest the plaintiff violently, rudely, offensively and angrily jerked or pulled the conductor to the door, and if you believe from the evidence that by such violent, rude offensive and angry conduct the conductor was provoked to strike the plaintiff, your verdict must be for the defendant." (25.) "If you believe from the evidence that the conductor struck the plaintiff in response to an assault and battery committed upon him by the plaintiff, your verdict must find for the defendant." (26.) "If you believe from the evidence that the plaintiff was the aggressor, that the plaintiff violently, rudely and angrily pulled or jerked the conductor for several feet along the car to or near the conductor, and that the conductor then struck the plaintiff, being provoked to do so by such rude, violent and angry act of the plaintiff, your verdict must be for the defendant, even though you may believe from the evidence that the conductor struck the plaintiff three times." (27.) "The plaintiff can not by his own violent, rude and angry conduct provoke

the conductor to strike him and then recover of the defendant for such assault and battery upon him."

There were verdict and judgment for the plaintiff, assessing his damages at $2,500. The defendant made a motion for a new trial, upon the ground, among others, that the verdict was contrary to the law and the evidence, and that the damages assessed were excessive. This motion was overruled, and the defendant duly excepted.

The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

WALKER, PORTER & WALKER and HUGH MORROW, for appellant.—The facts of this case do not authorize a verdict for the plaintiff. The defendant was not liable for the assault of the conductor, the wrong complained of being done without the scope of the conductor's employment. Where a passenger is, by his own conduct, a wrong-doer, he can not be heard to complain of the consequences of his own wrong-doing.—*Smith v. L. & N. R. R. Co.*, 95 Ky. 11; *R. R. Co. v. Christion*, 25 S. E. Rep. 411; *R. R. Co. v. Richmond*, 25 S. E. Rep. 565; *Peavy v. R. R. Co.*, 8 S. E. Rep. 70; *Harrison v. Fink*, 42 Fed. Rep. 787; *Railway Co. v. Jones*, 39 L. R. A. 787; *City E. Co. v. Shropshire*, 28 S. E. Rep. 508; *Scott v. Central Park, etc., R. R. Co.*, 53 Hun. 414.

LANE & WHITE, *contra.*—Under the facts of this case the acts of the servant were the acts of the corporation.—*K. C., M. & B. R. R. Co., v. Sanders*, 98 Ala. 308. All the acts of the conductor were within the line of his employment.—*B. & O. R. R. Co. v. Barger*, 26 L. R. A. 220; *A. T. & S. F. R. R. Co. v. Henry*, 29 L. R. A. 465; *Dwindle v. N. Y. Cen., etc., R. R. Co.*, 8 L. R. A. 227; *Chicago, etc., R. R. Co. v. Flexner*, 103 Ill. 546; 5 Am. & Eng. Ency. Law (2d ed.) 548, 549; *Hanson v. Railway Co.*, 62 Minn. 84; *Galena v. Hot Springs R. R. Co.*, 13 Fed. Rep. 121.

"A conductor of a train doubtless has his patience and forbearance severely tested at times, but he must not

settle his own personal difficulties with passengers, whilst they are such, any more than he should permit others to do so when he could avoid it. If he has the opportunity to prevent an assault on a passenger in his charge, it is his duty to do so, and his failure to make a reasonable effort to protect the passenger from such assault would make the company responsible." *New Jersey S. B. Co. v. Brockett,* 121 U. S. 646; *B. & O. R.R. Co. v. Barger,* 26 L. R. A. 220.

McCLELLAN, C. J.—There appears to be some divergence of opinion as to a common carrier's liability for an assault, and the like, committed by its agent upon a passenger when the agent is acting beyond the scope of his employment in the usual acceptance of that phrase. Of course the law is well settled that for torts committed by such agents or employes upon persons who are not passengers the employer is not liable unless the act was in a sense in the line of duty imposed by the employment, as where a conductor of a train being under duty to the railway company, and having authority to eject persons not entitled to carriage commits, out of his own malice and personal ill will toward such a person, an unnecessary assault upon him in ejecting him from the train, the wrongful act, though against the express rules and regulations of the carrier, is yet within the scope of the conductor's employment and the company would be liable in damages for it; but the reverse would be true—the company would not be liable— if such conductor should assault a person standing by the side of the train, for instance, and having no relations with the carrier, nor in any way encroaching upon the rights of the carrier, for in this latter case the wrongful act of the conductor would have no connection with his duties to the company and would be entirely beyond the scope of his employment. Such is the law as between trespassers and strangers generally, on the one hand, and the carrier on the other. But as between the carrier and its passengers an entirely different rule prevails. As to them the contract of carriage imposes upon the carrier the duty not only to carry safely and expeditiously between the termini of the route embraced in the contract, but also the duty to conserve by every

reasonable means their convenience, comfort and peace throughout the journey. And this same duty is, of course, upon the carrier's agents: They are under the duty of protecting each passenger from avoidable discomfort, and from insult, from indignities and from personal violence. And it is not material whence the disturbance of the passenger's peace and comfort and personal security or safety comes or is threatened. It may be from another passenger, or from a trespasser or other stranger, or from another servant of the carrier, or, *a fortiori*, from the particular servant upon whom the duty of protection peculiarly rests. In all such cases the carrier is liable in damages to the injured passenger. And it is of no consequence when the wrong is committed by the carrier's own servant, even that servant particularly charged with the duty of conserving the passenger's well-being *en route*, that the act bears no connection or relation with or to the duties of such servant to the carrier and is not committed as an incident to the discharge of any duty; but is utterly violative of all duty and apart and away from the scope of employment as that term is understood in the class of cases first above referred to: The carrier is liable in such cases because the act is violative of the duty it owes through the servant to the passenger and not upon the idea that the act is incident to a duty within the scope of the servant's employment; and it is manifestly immaterial that the act may have been one of private retribution on the part of the servant, actuated by personal malice toward the passenger, and having no attribute of service to the carrier in it. It is wholly inapt and erroneous to apply the doctrine of scope of employment as ordinarily understood to such an act:) Its only relation to the scope of the servant's employment rests upon the disregard and violation of a duty imposed by the employment. This is beyond question, we think, the true doctrine on principle, and, while as indicated above, there are adjudications against it, the great weight of authority supports it. The doctrine is well stated in *Goddard v. Grand Trunk Railway Co.*, 57 Mo. 202, s. c. 2 Am. Rep. 39, as follows: "The de-

fendants contend that they are not liable, because, as
they say, the brakeman's assault upon the plaintiff was
willful and malicious, and was not directly nor im-
pliedly authorized by them.  They say the substance
of the whole case is this, that 'the master is not respon-
sible as a trespasser, unless, by direct or implied au-
thority to the servant, he consents to the unlawful act.'
The fallacy of this argument, when applied to the com-
mon carrier of passengers, consists in not discrimi-
nating between the obligation which he is under to his
passenger, and the duty which he owes a stranger.  It
may be true that if the carrier's servant willfully and
maliciously assaults a stranger, the master will not be
liable; but the law is otherwise when he assaults one of
his master's passengers.  The carrier's obligation is
to carry his passenger safely and properly, and to treat
him respectfully, and if he intrusts the performance of
this duty to his servants, the law holds him responsi-
ble for the manner in which they execute the trust.  The
law seems to be now well settled that the carrier is
obliged to protect his passenger from violence and in-
sult, from whatever source arising.  He is not regarded
as an insurer of his passenger's safety against every
possible source of danger; but he is bound to use all
such reasonable precautions as human judgment and
foresight are capable of to make his passenger's jour-
ney safe and comfortable.  He must not only protect his
passenger against the violence and insults of strangers
and co-passengers, but *a fortiori*, against the violence
and insults of his own servants.  If this duty to the
passenger is not performed, if this protection is not fur-
nished, but, on the contrary, the passenger is assaulted
and insulted, through the negligence or the willful mis-
conduct of the carrier's servant, the carrier is neces-
sarily responsible.  And it seems to us it would be cause
of profound regret if the law were otherwise."  The
same principles are declared in *Dwindle v. N. Y. C. &
H. R. R. R. Co.*, 120 N. Y. 117, s. c. 17 Am. St. Rep.
611, following *Stewart v. Brooklyn Railroad Co.*, 90 N.
Y. 588, s. c. 43 Am. Rep. 185, in this language:  "The
idea that the servant of a carrier of persons may, in
the intervals between rendering personal services to the

passenger for his accommodation, assault the person of the passenger, destroy his consciousness, and disable him from further pursuit of his journey, is not consistent with the duty that the carrier owes to the passenger, and is little less than monstrous. While this general duty rested upon the defendant to protect the person of the passenger during the entire performance of the contract, it signifies but little or nothing whether the servant had or had not completed the temporary or particular service he was performing, or had completed the performance of it, when the blow was struck. That blow was given by a servant of the defendant while the defendant was performing its contract to carry safely and to protect the person of the plaintiff, and was a violation of such a contract." And in *Stewart's* case, just referred to, it was held that where a passenger on one of defendant's street cars was unjustifiably attacked and beaten by the driver, who was also acting as the conductor, because said passenger interferred to prevent him from beating a newsboy who had gotten on the car, it was held that the defendant was liable, the court declaring that the rule relieving a master from liability for a malicious injury inflicted by a servant when not acting within the scope of his employment did not apply between a common carrier of passengers and a passenger, Judge Tracy thus declaring the doctrine: "By the defendant's contract with the plaintiff it had undertaken to carry him safely, and to treat him respectfully, and while a common carrier does not undertake to insure against any injury from every possible danger, he does undertake to protect the passenger against any injury from the negligence or willful misconduct of its servants while engaged in performing a duty which the carrier owes to the passenger. A common carrier is bound so far as practicable to protect his passengers, while being conveyed, from violence committed by strangers and co-passengers, and he undertakes absolutely to protect them against the misconduct of its own servants engaged in executing the contract," or, as otherwise therein expressed, "from an assault committed upon a passenger by a servant intrusted

with the execution of a contract of a common carrier."
And so in North Carolina it has been decided that it
is the duty of a common carrier not only to carry its
passengers safely, but to protect them from ill treat-
ment from its servants, other passengers, and intruders;
and it is liable for an injury or ill treatment committed
by its servants whether in the line of their employment
or not.—*White v. Norfolk & Western Railroad Co.*, 115
N. C. 631, s. c. 44 Am. St. Rep. 489. So in Indiana it
has been declared that "one of the prime duties resting
upon a railroad company is to protect its passengers
from assaults and injuries by its servants; nor does the
question of its liability for a breach of this duty de-
pend upon whether or not the servant in the perform-
ance of the act is within the scope of his employment."
*Indianapolis Union Railroad Co. v. Cooper*, 6 Ind. App.
202. In *Railway Company v. Flexman*, 9 Ill. App. 250,
the doctrine is thus declared: "It is undoubtedly true,
that where the employee goes outside of the line of his
employment, and for purposes of his own inflicts an in-
jury upon the person of one who has no claim upon
the employer arising out of any special relation ex-
isting between them, being a stranger to the master,
the principle contended for is properly applied and has
ever been enforced as a rule of the common law, but it
does not appear to us that it should be extended so as
to embrace a case where the employee of a common car-
rier engaged in operating the train commits a tort upon
a passenger upon such train. In every contract for
carriage the carrier undertakes, not only that the ut-
most vigilance, cars, and skill shall be exercised to
safely transport the passenger to his destination, but
that during the passenger's transit he shall be treated
humanely, and protected from all dangers from what-
ever source arising so far as the efforts of the carrier
or his servants can be made available for the protec-
tion of such passenger." The same doctrine obtains in
Texas, where it is thus stated: "And a carrier of passen-
gers cannot invoke the rule that the master is not lia-
ble for an injury resulting from the willful and ma-
licious acts of his agents not done in the course of his
employment; that rule does not apply when the injury is

inflicted upon a passenger by the carrier's servant."
*Railroad Company v. Washington*, 30 S. W. Rep. 719.
And in *Craker v. Railroad Company*, 36 Wis. 657, it
was held that a female passenger who had been kissed
by the conductor could recover from the company,
RYAN, C. J., saying: But we need not pursue the sub-
ject. For, however that may be in general, there can be
no doubt of it in those employments in which the agent
performs a duty of the principal to third persons, as
between such third persons and the principal. Because
the principal is responsible for the duty, and if he del-
egate it to an agent, and the agent fail to perform it, it
is immaterial whether the failure be accidental or wil-
ful, in the negligence or in the malice of the agent; the
contract of the principal is equally broken in the negli-
gent disregard, or in the malicious violation, of the
duty by the agent. It would be cheap and superficial
morality to allow one owing a duty to another to com-
mit the performance of his duty to a third, without re-
sponsibility for the malicious conduct of the substi-
tute in the performance of the duty. If one owe bread
to another and appoint an agent to furnish it, and the
agent of malice furnish a stone instead, the principal
is responsible for the stone and its consequences. In
such cases, malice is negligence. Courts are generally
inclining to this view, and this court long since affirmed
it." Having reference to the rule as to the scope of
employment, and to the cases which apparently apply
it to passengers the Court of Errors and Appeals of
New Jersey in a recent case adopts the following lan-
guage of CLIFFORD, J., in *Pendleton v. Kinsley*: "Ad-
judged cases may be referred to which support that pro-
position without qualification, but they do not give full
scope and effect to the obligation which the carrier as-
sumes towards his passenger, nor to the rights and
duties which those relations create and imply. Passen-
gers do not contract merely for ship room and trans-
portation from one place to another, but they also trans-
tract for good treatment, and against personal rude-
ness and every wanton interference with their persons,
either by the carrier or his agent employed in the man-

agement of the ship or other conveyance, and for the fulfillment of those obligations the carrier is responsible as principal; and the injured party, in case the obligation of good treatment is broken, whether by the principal or his employees, may proceed against the carrier as the party bound to make compensation for the breach of the obligation."—*Haver v. Railroad Company*, 12 Am. & Eng. R. R. Cas. (N. S.) 261. And a great number of cases cited in Haver's case and the note thereto are to the same effect. On this subject Messrs. Elliott say: "There is much apparent conflict among the authorities upon this subject, but we think some of it is due to the use of the term 'scope of employment,' or 'line of duty,' in a different sense in different cases, or to a failure to place the decision on the correct ground. It is not merely a question of negligence in such cases, nor is it a question strictly depending upon the scope of the servant's particular employment. It is a question of the absolute duty of a railroad company to its passengers as long as that relation subsists, and a breach of that duty on its part, whether caused by the willful act of an employee or not. * * * Either the company or the passengers must take the risk of infirmities of temper, maliciousness, and misconduct of the employees whom the company has placed upon the train, and to whom it has committed the discharge of its duty to protect and look after the safety of its passengers. A passenger has no control over them, and the company alone has the power to select and remove them. It is, therefore, but just to make the company, rather than the passengers, take this risk, and to hold it responsible."—4 Elliott on Railroads, § 1638.

Of course, a conductor has the right of self-defense against the assault of a passenger; but the right is the same in this connection as in criminal law. He must be imperiled and he must be without fault. To be sure he need not retreat from his car. And he may assault a passenger when necessary to protect other passengers from assault, using no more than necessary force and this may become a duty—indeed it is a duty whenever it is a right. But he cannot assault a passen-

ger in *retaliation* for an assault committed upon himself or upon another passenger, and *a fortiori*, he cannot assault a passenger for abusive words, or in revenge or punishment under any circumstances. And if he does assault a passenger otherwise than under a necessity to defend himself or a passenger from battery or in rightfully ejecting a passenger who by his conduct toward other passengers has forfeited his right of carriage, the carrier is liable. The fault of the passenger short of producing a necessity to strike in self-defense will neither justfy the conductor in striking, nor relieve the carrier from liability for his act. Possibly such fault could be considered in mitigation of damages. As was said by CALDWELL, J.: "The office of a conductor of a passenger train is an exceedingly important and responsible one. There are few positions which demand of their incumbents more judgment and self-possession. Not only the peace and comfort, but the lives as well, of passengers are in their keeping. They must not by any act of their own disturb the one or endanger the other. They have to deal with all classes of people. They daily come in contact with the unscrupulous and dishonest, who are seeking to defraud the railroad company of what is justly its due, and are often grossly insulted by the ignorant and vulgar for a lawful and proper discharge of their duties. It is obvious that if a conductor were to attempt to redress every personal insult, or enter a boisterous quarrel with every vulgar and rude person who might invite it, there would be no peace or safety for his passengers. He must decline all such contests. He can take action only in those cases where the rights of the railroad company, or the peace, or the safety of passengers under his charge, or his own safety demand it. And then he can only act in the mode and manner heretofore indicated, accomplishing what he has a right to do in the given case with as little force, violence and confusion as is practicable and reasonable under the circumstances. * * * Words, [and acts short of producing a necessity for defensive effort stand upon the same plane] however irritating or opprobrious, will

not justify an assault by one under no special obliga-
tion to keep the peace; much less will they justify an
assault by a conductor, who is, by virtue of his posi-
tion, not only bound to keep the peace himself, but
whose duty it is to maintain peace and order in the
cars, and protect the passengers from assaults and vio-
lence."—*Gallena v. Hot Springs Railroad Co.*, 13 Fed.
Rep. 122-3. To like effect is the case of *Baltimore &
Ohio Railroad Co. v. Barger*, where the conductor struck
a passenger for grossly abusing and insulting him.
The company was held liable for punitive damages;
and in the course of the opinion, referring to the charges,
which are called prayers in the Maryland court, it was
said: "The first is, in substance, that if the jury be-
lieved the plaintiff used foul and abusive language to
the conductor, which caused or provoked the assault
complained of, and that in making said assault the
conductor was not acting for the defendant, and with-
in the scope of his duties as conductor, but was carry-
ing out a personal purpose and feeling, the defendant
was not liable for such act of the conductor.  *  *  *
To such doctrine we cannot subscribe, under the cir-
cumstances of this case. There may be, and doubtless
are, cases in which the conduct of a passenger toward
the employe of a railroad company was such that the
company would not be liable for the act of the employe.
A conductor, for example, would be justified in the
defense of his own person, or the property of the com-
pany in his charge, in using such force as would be
necessary for their protection against a passenger or
any one else, without rendering the company liable.
*  *  *   The plaintiff was at the time of the assault a
passenger on the train which was in charge of this
conductor, who was the agent of the company to see,
as far as he reasonably could, that the plaintiff and
other passengers were properly treated and carried to
their respective points of destination. If the plaintiff
persisted in misbehaving on the train either by the use
of foul and abusive language toward the conductor or
in any other way calculated to frighten or materially
interfere with the comfort and safety of the other

passengers, after being admonished by the conductor, the latter would have been justified in ejecting him from the train. The remedy in such a case would be to eject an unruly passenger—not to assault him and then let the employer escape all liability because he, the conductor, was carrying out 'a personal purpose and feeling.' A conductor of a train doubtless has his patience and forbearance severely tested at times, but he must not settle his own personal difficulties with passengers, any more than he should permit others to do so when he could avoid it."—26 L. R. A. (Ind.) 222. The same principles are declared by the Supreme Court of Maine in the following opinion: "Passenger carriers are responsible for the misconduct of their servants. Railroad companies, as well as other carriers of passengers, are responsible for assaults and batteries committed by their employees upon passengers. This responsibility of course rests upon the assumption that the battery cannot be justified. If it can be, no responsibility attaches to any one. If it cannot be, both the servant and the carrier are liable. If the servant is first assaulted, he may defend himself. If he is resisted in the performance of any duty, he may use force sufficient to overcome the resistance. But the assault being over, or the resistance ended, he cannot pursue and punish the wrong-doer. The rule applicable to such cases is this, that when a *prima facie* case of assault and battery is sought to be justified, it is incumbent upon the one who justifies, to show that no more force was used than the exigencies of the case called for. The force used must be suitable in kind and reasonable in degree, otherwise the justification fails. It is the duty of the conductor, and other employes upon a train of cars, to treat the passengers with civility, and to abstain from all unnecessary violence toward them. It is also the duty of passengers to observe the rules and regulations of the company, and to conduct themselves generally so as not to invite uncivil treatment, nor to provoke violence. But it is not true that disobedience to the rules of the company will operate as a license to the employees to maltreat

a passenger. If a passenger persists in violating the reasonable rules of the company, after notice of the rules, and a request to him not to act contrary to them, the carrier will have a right to rescind the contract for his conveyance, and refuse to carry him further. But he will have no right to maltreat him while continuing to perform the contract for his conveyance. Nor is it true that an uncivil word by a passenger at the beginning of his journey, will justify the carrier's servants in treating him with insolence to the end of it. Nor is it true that an assault, or resistance to the performance of a duty, will justify the servant in pursuing and punishing the passenger, after the assault or the resistance is over. If he does, he makes the carrier as well as himself, liable for the injury. If, therefore, it be true, as the defendants contend, that the plaintiff was the aggressor, that he first assaulted the brakeman and resisted him in the performance of a legitimate duty, it was still a question of fact for the jury to determine, whether the brakeman did not use greater violence than the exigencies of the case demanded; whether he did not pursue the plaintiff, and inflict the blows upon his head with the iron poker, after the latter had ceased his assault, had ceased his resistance, and was returning to his seat with his back to the brakeman. Under the instructions of the court the jury must have so found, or they could not have returned a verdict for the plaintiff; and in our judgment the evidence fully justified the finding."—*Hanson v. E. & N. A. R'y Co.,* 62 Me. 84, 88.

The present action is prosecuted by Baird, a minor, by next friend, against the Birmingham Railway & Electric Company and sounds in damages for an assault and battery alleged to have been committed by one Sorsby, conductor of defendant's train upon which plaintiff was a passenger. That the assault and battery was committed is proved beyond question and not denied. It is not only not shown that the conductor was justified in the act, but to the contrary it clearly appears that he assaulted and beat the plaintiff without legal necessity or excuse. For while one or two

witnesses testify that Baird attempted to strike Sorsby, it is shown that they were not in a position to see what occurred as accurately as several other witnesses including Sorsby himself, who depose that Baird made no such attempt, Sorsby testifying: "If Mr. Baird struck me at all I didn't know it. I didn't see him attempting to strike me when I struck him in the face, unless it was to throw up his arm. I don't think he made any effort to strike me at all.   *   *   *   Mr. Baird pulled me to the door of the car and I followed him outside and struck him. The momentum of the bell cord did not jerk my arm out that way. I hit him in the face as hard as I could. There was a decidedly angry expression on Mr. Baird's face, and he had grabbed the bell cord and broke the cord loose and pulled me along with it, which was an angry act; that is all that I know of. He didn't say anything out of the way to me. I hit Mr. Baird in the face of my own free will." And for all the purposes of this case it is to be taken that Baird made no hostile demonstration toward Sorsby at or about the time this vicious assault was made on Baird by Sorsby, for if any jury could be found to say that Baird struck at Sorsby on the testimony of the one or two witnesses above referred to who were without opportunity to see what transpired and who doubtless mistook the fending motion of Baird's arm for an effort to strike, against the overwhelming testimony of all the witnesses who were in a position to see accurately and against the above quoted testimony of Sorsby himself, it would yet remain true that Sorsby's act was not in defense against said blow, and was not necessary, for he saw no such attempt and says none was made, but that he struck Baird as a vent to his own wrath and malice and in punishment for the conduct of the latter in attempting to pull the bell cord, breaking it while Sorsby had hold of it and jerking him some feet along the aisle of the car. But if it be conceded that Baird attempted to strike Sorsby, and that Sorsby was aware of it, and even that he assaulted and beat Baird in consequence of such attempt by the latter, the act of Sorsby would be nevertheless a wrongful act for which

the defendant is responsible since it is altogether clear on the proof that Sorsby was at fault in bringing on the trouble in that he unnecessarily followed Baird out on the platform of the car in an angry and threatening manner. So that applying the principles of law to the facts in any possible aspect of them the conclusion must be that Sorsby, defendant's conductor, committed an unjustifiable assault and battery on Baird, the defendant's passenger. Whether Baird had or had not the right to pull the bell cord in order to stop the car after being carried past his station, Sorsby had no right to strike him for doing so. Whether, when the cord broke, both having hold of it, he pulled or jerked Sorsby several feet along the aisle, and conceding this, if it occurred, to have been a technical assault, Sorsby had no right to strike him in "retaliation" for or in "response to" such assault. Even if Baird attempted to strike Sorsby with or without Sorsby's knowledge, Sorsby yet had no right to defend himself against such attack, being at fault in provoking it.

The case was tried below on views of the law and theories of the rights of the parties which were far too favorable to the defendant. The doctrine of scope of employment was given in charge to the jury, when, as we have seen, that doctrine does not obtain in cases of this character. Then too it was given in charge to the jury that plaintiff's right of recovery depended upon the further inquiry whether he or Sorsby was at fault in bringing on the difficulty, "that the plaintiff's right to recover in this case depends upon who was the aggressor, and that if the plaintiff was the aggressor he cannot recover," when, as we have declared, no aggression on the part of plaintiff short of producing a necessity for Sorsby to strike in defense of his person against physical harm would be a defense to the carrier. Very many charges were refused to the defendant. Those numbered respectively 1, 2, 3, 4, 5, 6, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26 and 27, were each properly refused as being affirmatively, or having a tendency, opposed to the principles above set forth.

Charges 7 and 8 are mere arguments.

Charges 9, 11, 12, 13 and 14 are affirmative instruc-

tions for the defendant, and as the complaint and each count of it was supported by the evidence they were, of course, properly refused.

The clauses of the court's general charge to which exceptions were reserved really meant that the jury had a right on the evidence to impose punitive damages; and unquestionably they had such right. If it was apprehended that the form of expression might mislead the jury, an explanatory charge should have been requested. Charge 9 refused to defendant had a tendency to mislead the jury to the conclusion that they were not authorized to impose punitive damages.

The several exceptions reserved by the defendant to rulings on the competency of testimony and to rulings relating to the argument of plaintiff's counsel, have been considered by the court *en banc,* and found to be without merit. We shall not further extend this opinion by a discussion of them.

All the questions arising on the motion for a new trial except one are covered by what we have said. The one not so covered has reference to the amount of the verdict, twenty-five hundred dollars, which is claimed to be excessive. We by no means think the recovery was for too great a sum.

Affirmed.