## MISSOURI, K. & T. RY. CO. OF TEXAS et al. v. BROWN.

(Court of Civil Appeals of Texas. March 22, 1911.)

1. CARRIERS (§ 239*)—CARRIAGE OF PASSENGERS—EXISTENCE OF RELATION OF PASSENGER.

If one boarded a passenger train without a ticket, but with money, intending to pay his fare, and paid it or would have done so had he been given an opportunity, he was a passenger.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 974, 975; Dec. Dig. § 239.*]

2. EVIDENCE (§ 125*)—DECLARATION OF INJURED PERSON—RES GESTÆ.

Declarations of a person ejected from a train that he had money, had paid his fare, and had been pushed off by the porter, made in the presence of a doctor who was called to see him 30 minutes after he was picked up and in presence of another person who assisted in picking him up a few minutes after he fell, and after he had recovered consciousness sufficiently to comprehend what he was saying, were admissible as res gestæ.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 369–371; Dec. Dig. § 125.*]

3. APPEAL AND ERROR (§ 1064*) — REVIEW — HARMLESS ERROR—ERRONEOUS INSTRUCTION.

In an action against a railroad company for the death of one alleged to have been pushed from a moving train while a passenger, a charge that if decedent was a passenger, and had been pushed from the train by the porter, acting within the apparent scope of his authority, plaintiff could recover, though erroneous where the uncontradicted evidence showed that it was not the porter's duty to collect fares or put persons off the train, was not prejudicial to defendant, since, under such conditions, defendant would be responsible for such wrongful act, regardless of the authority of the servant.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1064.*]

4. CARRIERS (§ 361*)—CARRIAGE OF PASSENGERS—EJECTION OF PERSON FROM TRAIN.

Where it appeared that a porter, if he pushed a person from the train, acted without authority, and it did not appear that there was any lack of diligence on the part of the conductor in failing to discover and prevent the wrongful act, the carrier would not be liable if the person ejected was a trespasser on the train.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 361.*]

Appeal from District Court, Falls County; Richard I. Munroe, Judge.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

Action by Mark Brown against the Missouri, Kansas & Texas Railway Company of Texas and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Spivey & Carter, for appellants. Nat Lewellyn, for appellee.

JENKINS, J. Spencer Brown, a negro boy about 18 years of age, either fell from appellant's passenger train, as it approached Lorena, a station on appellant's road, or was knocked or shoved from same by a porter on appellant's train, and received injuries from which he died on the following day. The father of the deceased, appellee herein, brought suit and recovered judgment against appellant for $1,000.

[1] The theory of appellee is that the deceased boarded the train at Bruceville, a station five miles south of Lorena, without a ticket, but with money intending to pay his fare, and that he did so or would have done so had he been furnished an opportunity to pay the same. The court correctly instructed the jury that, if such were the facts, the deceased was a passenger on said train. The evidence relied upon to support this theory is that of Claude Elliott, who testified that he was a passenger on the negro coach, and that, just before the train got to Lorena, he saw the negro porter and another negro standing on the front platform of the passenger coach, and that the porter shoved the other negro off, and also the declarations of the deceased, made upon recovering consciousness, that he had money and paid his fare, and was pushed off by the porter. [2] These declarations of the deceased, as testified to by Dr. Gordon, who was called to see him in 30 minutes after he was picked up, and by John Boldon, who assisted in picking him up a few minutes after he fell, were objected to by appellant, and error is assigned as to their admission. We think that they were properly admitted as res gestæ, and also that the deceased at the time of making the same had recovered consciousness sufficiently to comprehend what he was saying. The theory of appellant is that deceased was not a passenger, but was a trespasser, and that he was not pushed off but fell from the train. The evidence in support of this theory is that of the engineer who saw several persons running towards the train as it pulled out of Bruceville, but, on account of the darkness, he could not tell whether or not they were negroes, and that of another witness who testified that he saw two negroes board the train as it pulled out of Bruceville, and one of them got on the "blind" behind the tender, and the other whose name he knew to be Brown, but did not know his given name, got on the "blind" between the baggage and the mail coach. The porter denies pushing any one off the train, or knowing anything about the occurrence. The conductor did not hear about any one either falling or being pushed from the train until he reached Waco.

[3] The court instructed the jury to find for appellee if they found that the deceased was a passenger, and that he was pushed from the train by the porter, and that the porter was acting "within the apparent scope of his authority." Appellant assigns error as to this instruction upon the ground that the uncontradicted evidence shows that it was no part of the porter's duty, express or implied, to collect fares or put parties off of the train. We concur in this view of the testimony. Under the facts of this case, it was error to give this charge, but it was error in favor of appellant. If the deceased was a passenger on appellant's train and was wrongfully pushed therefrom by the porter or any other servant of appellant, the appellant would be responsible for such wrongful act, without reference to the authority of such servant, real or apparent. Railway Co. v. Washington, 30 S. W. 719; Dillingham v. Russell, 73 Tex. 41, 11 S. W. 139, 3 L. R. A. 634, 15 Am. St. Rep. 753; Railway Co. v. Edmond, 29 S. W. 518; Railway Co. v. McMonigal, 25 S. W. 341. Upon this question we make the following excerpt from the able opinion of the Supreme Court of Alabama in the well-considered case of Railway Co. v. Baird, 130 Ala. 334, 30 South. 456, 54 L. R. A. 752, 89 Am. St. Rep. 43: "There appears to be some divergence of opinion as to a common carrier's liability for an assault, and the like, committed by its agent upon a passenger when the agent is acting beyond the scope of his employment in the usual acceptation of that phrase. Of course, the law is well settled that for torts committed by such agents or employés upon persons who are not passengers the employer is not liable, unless the act was in a sense in the line of duty imposed by the employment, as where a conductor of a train, being under a duty to the railway company, and having authority to eject persons not entitled to carriage, commits out of his own malice and personal ill will towards such a person an unnecessary assault upon him in ejecting him from the train, the wrongful act, though against the express rules and regulations of the carrier, is yet within the scope of the conductor's employment, and the company would be liable in damages for it. But the reverse would be true—the company would not be liable—if such conductor should assault a person standing by the side of the train, for instance, and having no relations with the carrier, nor in any way encroaching upon the rights of the carrier; for in this latter case the wrongful act of the conductor would have no connection with his duties to the company, and would be entirely beyond the scope of his employment. Such is the law as between trespassers and strangers generally on the one hand and the carrier on the other. But as between the carrier and its passengers an entirely different rule prevails. As

to them the contract of carriage imposes upon the carrier the duty, not only to carry safely and expeditiously between the termini of the route embraced in the contract, but also the duty to conserve by every reasonable means their convenience, comfort, and peace throughout the journey. And this same duty is, of course, upon the carrier's agents. They are under the duty of protecting each passenger from avoidable discomfort and from insult, from indignities, and from personal violence. And it is not material whence the disturbance of the passenger's peace and comfort and personal security or safety comes or is threatened. It may be from another passenger or from a trespasser or other stranger, or from another servant of the carrier, or, a fortiori, from the particular servant upon whom the duty of protection peculiarly rests. In all such cases the carrier is liable in damages to the injured passenger. And it is of no consequence, when the wrong is committed by the carrier's own servant—even that servant particularly charged with the duty of conserving the passenger's well-being en route—that the act bears no connection or relation with or to the duties of such servant to the carrier, and is not committed as an incident to the discharge of any duty, but is utterly violative of all duty and apart and away from the scope of employment as that term is understood in the class of cases first above referred to. The carrier is liable in such cases because the act is violative of the duty. it owes through the servant to the passenger, and not upon the idea that the act is incident to a duty within the scope of the servant's employment; and it is manifestly immaterial that the act may have been one of private retribution on the part of the servant, actuated by personal malice towards the passenger, and having no attribute of service to the carrier in it. It is wholly inapt and erroneous to apply the doctrine of scope of employment, as ordinarily understood, to such an act. Its only relation to the scope of the servant's employment rests upon the disregard and violation of a duty imposed by the employment. This is, beyond question, we think, the true doctrine on principle."

[4] The court also instructed the jury that if the deceased was a trespasser and was pushed from the train by the porter, and such act was within "the apparent scope of the porter's authority," their verdict should be for the plaintiff. Appellant requested a charge to the effect that the uncontradicted evidence showed that it was not within the general scope of the porter's authority to put parties off of the train, and that, if they found that deceased was a trespasser, their verdict should be for the defendant, unless they found that the porter in pushing deceas-

ed from the train, if he did so, was acting under the instruction or with the knowledge or consent of the conductor, or that the conductor could have known of same, by the exercise of reasonable care and diligence. The charge given was error. The charge requested should have been given, though it was not as favorable as the appellant was entitled to. The evidence clearly showing that the porter, if he pushed the deceased from the train, acted without authority, and there being no evidence indicating any lack of diligence on the part of the conductor in failing to discover and prevent the wrongful act on the part of the porter, the court should have instructed the jury, without qualification, that, if they found that the deceased was a trespasser on the train, their verdict should be for the defendant. Railway Co. v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902; Railway Co. v. Moody, 23 S. W. 41; Railway Co. v. Black, 87 Tex. 160, 27 S. W. 120; Lytle v. News & Hotel Co., 27 Tex. Civ. App. 530, 66 S. W. 241; Galaviz v. Railway Co., 15 Tex. Civ. App. 61, 38 S. W. 234.

For the error above indicated as to the charge given, and on account of the error in refusing to give the requested charge, this cause is reversed and remanded.

Reversed and remanded.

RICE, J., being disqualified, did not sit in this case.