## MISSOURI, K. & T. RY. CO. OF TEXAS v. BROWN.

(Court of Civil Appeals of Texas. Austin. April 2, 1913.)

1. CARRIERS (§ 383*) — PASSENGER'S ACTION FOR INJURIES—SUFFICIENCY OF EVIDENCE—QUESTION FOR JURY.

· In an action for the death of a person thrown off a railroad train by a porter, evidence *held* sufficient to make a question for the jury as to whether deceased was a passenger or a trespasser.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1492–1496; Dec. Dig. § 383.*]

2. CARRIERS (§ 239*)—CARRIAGE OF PASSENGERS—"PASSENGER"—"TRESPASSER."

A person who boarded a train, intending to pay his fare when demanded by the person entitled to receive it, and who would have paid it upon such demand to the conductor, was a "passenger," and not a "trespasser," although he had already delivered a sum equivalent to his fare to the porter, who had no authority to collect fares.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 974, 975; Dec. Dig. § 239.*

For other definitions, see Words and Phrases, vol. 6, pp. 5218–5227; vol. 8, pp. 7748, 7094.]

Appeal from District Court, Falls County; Richard I. Munroe, Judge.

Action by Mark Brown against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Reformed and affirmed on condition that plaintiff file remittitur.

Spivey & Carter, of Marlin, for appellant. Nat. Llewellyn, of Marlin, for appellee.

KEY, C. J. This is the second appeal in this case (Railway v. Brown, 135 S. W. 1076), and reference is here made to our former opinion for a full statement of the nature of the case. The former judgment was reversed on account of an error in the court's charge, and in the refusal of a requested instruction. At the last trial the case was properly tried, and a verdict and judgment were rendered for the plaintiff for $2,000, to reverse which this appeal is prosecuted.

But two assignments are presented in appellant's brief, and these are, first, that the evidence was not sufficient to authorize the court to submit to the jury whether or not the deceased was a passenger on appellant's train at the time he received the injuries which resulted in his death; and, second, that the verdict is excessive.

[1] As to the first question, the testimony is substantially the same as it was on the former trial, and as stated in our former opinion, and we held that it was sufficient to require the court to submit the case to the jury. It is true that, in order for the plaintiff to recover, it was necessary to prove that the deceased was a passenger on appellant's train, and that he was pushed off of it by the porter, as alleged by the plaintiff. It is not denied in this court that there was sufficient evidence to warrant a finding that the porter pushed the deceased off the train while it was running, and that his death resulted from that wrongful act; but the contention is that the evidence fails to show that the deceased was a passenger. The proof indicates that the deceased boarded the train without a ticket for the purpose of going from Bruceville to Lorena, a distance of five or six miles, and that he had in his pocket more than enough money to pay his fare. The plaintiff also submitted testimony to the effect that, soon after the train left Lorena, the deceased was found lying across the track in a semiconscious condition.

John Bolden testified as follows: "I remember the occasion of Spencer Brown being hurt on the railroad at Lorena. No. 4 came up. I do not remember the date; it has been so long, but I know it was in the evening about dusk. No. 4 ran in and I was there at the depot, and after it left some one says, 'There is a man lying across the track back there.' And then some of us rushed back to see what it was, and found this boy. I did not know him. We made arrangements to take him over and put him in a house. After we got there, we never could get anything out of him though. He was unconscious. He would wake up, it seemed like, when we would say something to him. We never could get him to talk, except he seemed to have money on his mind, and every now and then he would say, 'I had money; I paid my way,' and he would go back unconscious. That is all we could get out of him. He was kept there all night and taken to Waco next morning. That is all I know about it. I know now who the boy was; I just know he was a Brown; I never did pay much attention to his name. I disremember what the boy's name was. Yes, sir; he made that assertion several times that he had money and paid his way; and we would ask him who he was and where he was from, none of us knew him, and it seemed like he would sink back unconscious."

Dr. Gordon, who went immediately to see the deceased and testified as to the nature of his injuries, also stated: "When I got to him he was in an unconscious condition and suffering from a considerable shock. He did not make any direct statement to me, but I heard him saying something while I was attending to him about being on the train and they shoved him off; he was in a semiconscious condition."

Claude Elliott testified that as the train approached Lorena he went into the negro coach, saw the porter and another man standing on the front platform of that coach, and he stated, in effect, that the porter pushed the other man off the train.

Counsel for appellant contend that the mere statement of the deceased to the effect that he had money and had paid his way

was not sufficient evidence tending to show that he was a passenger to authorize the submission of that issue to the jury. The argument seems to be that the statement referred to fails to show that he paid his fare to the conductor, the only person on the train who was authorized to receive it, and that it also fails to show that he boarded the train in good faith, intending to pay his fare. We are unable to agree with either of these contentions. If it be true, as contended, that he had not paid his fare unless he handed the money to the conductor, then it seems to us that the general statement that he had paid his fare embraced by implication the statement that the money was delivered to the person authorized to receive it, otherwise it would not constitute a payment of his fare. It is true that upon the last trial the witness said that he stated that he had paid his way, but we fail to see any substantial difference between that and the statement that he had paid his fare.

[2] Furthermore, whether the deceased meant by the statement referred to that he had delivered the money to the conductor or to the porter, it seems clear to us that it tended strongly to show that he boarded the train intending to pay his fare when demanded by the person entitled to receive it, and that he would have paid it upon such demand to the conductor, although he may have already delivered to the porter a sum of money equivalent to the fare; and, if such were the conditions at the time of his injury, then he was not a trespasser but a passenger. Hence we conclude that the first assignment is without merit, and must be overruled.

We sustain the second assignment, and hold that the verdict is excessive to the extent of $750. If the appellee remits that sum by April 16, 1913, the judgment will be reformed and affirmed; otherwise the case will be reversed and remanded.[1]

RICE, J., being disqualified, did not sit in this case.

———

[1] Remittitur filed April 9, 1913, and judgment reformed and affirmed. Costs of the appeal taxed against appellee.